```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                        EASTERN DIVISION
```

**STANLEY W. SHOPE,**

        **Plaintiff,**

  vs.                                        Civil Action 2:14-cv-2055
                                                               Judge Smith
                                                               Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**I.   Background**

    This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits.  This matter is before the Court on *Plaintiff's Statement of Errors*, ECF 10, and *Memorandum in Support of Plaintiff's Position* ("*Statement of Errors*"), ECF 10-1, and *Defendant's Memorandum in Opposition* ("*Commissioner's Response*"), Doc. No. 11.

    Plaintiff Stanley W. Shope filed his application for benefits on February 14, 2012, alleging that he has been disabled since February 28, 2003.  *PAGEID* 265-71.  The claim was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    An administrative hearing was held on April 29, 2013, at which plaintiff, represented by counsel, appeared and testified, as did

Katherine Bradford, who testified as a vocational expert.  *PAGEID* 119.  At the hearing, plaintiff, through his representative, amended his alleged onset date to September 21, 2005.  *PAGEID* 286.  In a decision dated May 4, 2013, an administrative law judge concluded that plaintiff had been under a disability since that amended onset date.  *PAGEID* 176-82.  However, on January 28, 2014, the Appeals Council vacated that decision and remanded the matter to for further consideration.  *PAGEID* 183-88.

In remanding the matter, the Appeals Council noted that, although the administrative law judge had "cited to medical evidence and opinions from treating cardiologist Patrick Whitlow, M.D.," this evidence post-dated plaintiff's date last insured, *PAGEID* 184-85, and Dr. Whitlow had not specified whether "the limitations he assessed existed as of June 30, 2009, the claimant's date last insured." *PAGEID* 185.  This was significant, according to the Appeals Council, because "the claimant's impairments and limitations are more severe now than they were at the time the claimant's insured status expired." *Id*.  The Appeals Council also found that the administrative law judge had failed to "compare the claimant's residual functional capacity to the physical and mental demands of the claimant's past relevant work pursuant to 20 CFR 404.1560(b)" and had failed to "ask the vocational expert if the claimant had acquired any skills that would transfer to other work." *PAGEID* 185-86.  The Appeals Council concluded that the May 4, 2013 decision was not supported by substantial evidence and remanded with direction that

2

The Administrative Law Judge will:

- Obtain, if available, additional evidence concerning the claimant's impairments that is relevant to the period ending June 30, 2009, the date the claimant's insured status expired (20 CFR 404.1512-1513).

- Obtain evidence from a medical expert to clarify the nature, severity, and limiting effects of the claimant's impairments for the period ending June 30, 2009 (20 CFR 404.1527(e) and Social Security Ruling 96-6p).

- Give further consideration to the claimant's maximum residual functional capacity for the relevant period and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 96-8p).

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's ability to perform his past relevant work, as he actually performed that work, or other work that exists in significant numbers in the national economy (Social Security Ruling 83-12).  The vocational expert will also assist in determining whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. . . .

*PAGEID* 186.

Another administrative hearing was held, before a different administrative law judge, on August 7, 2014. At that hearing, plaintiff, represented by counsel, appeared and testified, as did Carl W. Hartung, who testified as a vocational expert. *PAGEID* 44, 59.  In a decision dated September 11, 2014, that administrative law judge concluded that plaintiff was not disabled from September 21, 2005, through the date of the administrative decision. *PAGEID* 44-52.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 2, 2014.

3

*PAGEID* 31-33.

Plaintiff was 63 years of age on the date of the administrative law judge's September 11, 2014 decision. *See PAGEID* 52, 265. Plaintiff has at least a high school education and has past relevant work as a census enumerator and examination proctor. *PAGEID* 51. Plaintiff was last insured for disability insurance purposes on June 30, 2009. *PAGEID* 46. He engaged in substantial gainful activity from April through May 2009 and from March through May 2010. *Id*.

**II. September 11, 2014 Administrative Decision**

The administrative law judge found that plaintiff had engaged in substantial gainful activity as a census taker from April through May 2009 and from March through May 2010. *PAGEID* 46. The administrative law judge also found that plaintiff's 2009 job did not end because of plaintiff's impairments and, although the 2010 job did end because of plaintiff's impairments, that job lasted more than three months with no special considerations. *Id*. The administrative law judge therefore concluded that plaintiff's work as a census taker in 2009 and 2010 did not constitute unsuccessful work attempts. *Id*. However, because there was "a continuous 12-month period(s) during which the claimant did not engage in substantial activity," the administrative law judge continued the sequential analysis to "address the period(s) the claimant did not engage in substantial gainful activity." *PAGEID* 47.

The administrative law judge found that plaintiff suffers from the severe impairment of ischemic heart disease. *PAGEID* 47. However,

4

this severe impairment neither meets nor equals a listed impairment and leaves plaintiff with the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) except: occasional climbing stairs/ramps, stooping, crouching, and crawling; never climbing ladders/ropes/scaffolds; no exposure to work at unprotected heights or around moving machinery; and no concentrated exposure to temperature extremes." *PAGEID* 48. Relying on the testimony of the vocational expert, the administrative law judge found that this RFC does not preclude the performance of plaintiff's past relevant work as a census enumerator and examination proctor. *PAGEID* 51-52. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from September 21, 2005, through the date of the administrative decision. *PAGEID* 52.

**III. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This

5

Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In his *Statement of Errors*, plaintiff first argues that the administrative law judge "erred in finding the work Plaintiff performed for the U.S. Census Bureau []rose to the level of substantial gainful activity." *Statement of Errors*, p. 10 (emphasis omitted). Citing to *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598 (6th Cir. 1990), plaintiff specifically argues that the "doctrine of collateral estoppel prevents ALJ Keller [the administrative law judge who considered plaintiff's application on remand from the Appeals Council] from reversing the finding of ALJ Sullivan [the administrative law judge who first considered plaintiff's application] that the U.S. Census Bureau jobs were not substantial gainful activity. This is particularly true as the Appeals Council made no mention of this finding in its order of

6

remand." *Statement of Errors*, pp. 13-14. Plaintiff's argument is not well taken.

In *Dennard*, the United States Court of Appeals for the Sixth Circuit held that a prior administrative determination regarding the exertional level of a claimant's past work was binding in subsequent administrative proceedings. *Dennard*, 907 F.2d at 600. *Dennard* "involved a final determination in a prior application being applied in a subsequent application." *Melton ex rel. Est. of Melton v. Comm'r of Soc. Sec.*, 178 F.3d 1295 (6th Cir. 1999). *Dennard* "clearly demonstrate[s] that the principles of res judicata can be applied against the Commissioner. When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997).

In the case presently before the Court, plaintiff argues that the "doctrine of collateral estoppel prevents [the second administrative law judge] from reversing the finding of [the first administrative law judge] that the U.S. Census Bureau jobs were not substantial gainful activity." *Statement of Errors*, p. 13. The May 4, 2013 decision of the first administrative law judge was not, however, a final decision concerning plaintiff's entitlement to benefits. As noted *supra*, the Appeals Council vacated that decision and remanded the matter for further consideration. *PAGEID* 183-88. The hearings were "on the same application, so there was never a binding prior adjudication of

7

disability." *See Melton ex rel. Est. of Melton*, 178 F.3d 1295 at *6 (6th Cir. 1999). *See also Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570, 571 (6th Cir. 2003) ("The only final decision in this case is the March 15, 2000, hearing decision which is now before this court. All other decisions relevant to Wireman's social security disability insurance benefits never became final as they were vacated pursuant to remands for further proceedings. Therefore, Wireman's contention that the ALJ was bound by the findings of ALJ Cogan is meritless."); *Davis v. Callahan*, 145 F.3d 1330 (6th Cir. 1998) ("Under *Dennard,* collateral estoppel applies to a prior final decision. In this case, the Appeals Council vacated the 1992 decision. Therefore, the 1992 decision was not a final decision and *Dennard* is not applicable."). *Dennard* is therefore not applicable in this case.

Plaintiff next argues that the administrative law judge erred in evaluating the June 22, 2012 opinion of plaintiff's treating cardiologist, Dr. Whitlow. *Statement of Errors*, pp. 15-18. As noted supra, the Appeals Council based its order or remand, in part, on the failure of Dr. whitlow, plaintiff's long-time treating cardiologist, to specify whether plaintiff's limitations existed prior to the lapse of his insured status. Dr. Whitlow thereafter indicated that plaintiff's limitations did exist prior to the lapse of his insured status by circling the word, "Yes," on a form addressing that issue. *PAGEID* 386. The administrative law judge discounted Dr. Whitlow's opinion in this regard on the basis that "the question posed to Dr. [Whitlow] about the claimant's limitations existing as of June 30,

8

2009" was "a leading question posed to get a particular answer." *PAGEID* 49. Plaintiff challenges the administrative law judge's evaluation of Dr. Whitlow's opinion in this regard, *Statement of Errors,* p. 16, and argues that the administrative law judge should have given controlling weight to Dr. Whitlow's opinion. *Id*. at p. 17.

The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. § 404.1527(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e*., reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at

\*5 (July 2, 1996)). This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

On June 22, 2012, Dr. Whitlow completed a cardiac RFC questionnaire. *PAGEID* 381-86, 752-57. Dr. Whitlow noted that he had followed plaintiff since 2000 for coronary artery disease, hypertension, hyperlipidemia, and percutaneous coronary interventions. *PAGEID* 381. Dr. Whitlow indicated that plaintiff experiences chest pain and he identified a "6/2012 coronary angiogram/PCI" as the "clinical findings, laboratory test results which show [plaintiff's] medical impairments." *Id.* According to Dr. Whitlow, plaintiff has marked limitation of physical activity. *Id.* Because of coronary artery disease, plaintiff is capable of low stress jobs. *PAGEID* 382. Dr. Whitlow opined that plaintiff frequently experiences cardiac symptoms severe enough to interfere with attention and concentration. *Id.* He estimated that plaintiff can walk two city blocks without rest, can sit for two hours before needing to get up, can stand for two hours in an eight-hour workday, and can walk for 30 minutes in an eight-hour workday. *PAGEID* 383. Plaintiff can stand for two hours before needing to sit and can sit for eight hours in an eight-hour workday. *PAGEID* 384. Plaintiff can frequently lift 10 pounds, can

10

occasionally lift 20 pounds, but can rarely lift 50 pounds.  *Id*.  He can frequently twist, can occasionally stoop (bend), and can rarely crouch, climb ladders, and climb stairs.  *Id*.  Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and should avoid even moderate exposure to extreme cold or heat and hazards such as machinery and heights.  *Id*.  Plaintiff would need to "avoid extremely stressful conditions" and would likely be absent from work one day per month as a result of his impairments.  *PAGEID* 386.  The questionnaire asked whether "the limitation(s) set forth [in his opinion] exist as of June 30, 2009?"  *Id*.  In response to this question, Dr. Whitlow circled "Yes."  *Id*.

The administrative law judge evaluated Dr. Whitlow's opinion as follows:

> On June 22, 2012, Patrick Whitlow, M.D., the claimant's treating cardiologist, opined that the claimant is capable of low stress work.  He can sit two hours at a time and sit eight hours during the workday, stand two hours total in an eight hour workday and walk 30 minutes total in an eight hour workday.  The claimant can lift 20 pounds occasionally and 10 pounds frequently, can occasionally stoop, and can rarely crouch or climb ladders/stairs.  He needs to avoid moderate exposure to temperature extremes and hazards and avoid concentrated exposure to fumes, odors, etc.  Dr. Whitlow further stated that the claimant would be absent about one day per month and that his limitations for the claimant existed as of June 30, 2009 (Exhibit 16E, 16F).
>
> I can only give partial weight to Dr. Whitlow's opinion.  I agree with his assessment on lifting as well as the environmental and postural limitations.  However, the objective evidence does not support the restrictions to low stress work and on walking and standing.  As noted above, the claimant was able to exercise to 7 METs on the treadmill stress test.  Between his acute episodes he denied having chest pain or shortness of breath, and echocardiograms and cardiac catheterizations demonstrated normal left ventricular functioning with normal ejection

11

> fractions.  Additionally, as previously stated, in 2006 the claimant stated that he was doing very well and bicycling 80 to 120 miles weekly, and in 2007 he was trying to keep "active" and was exercising.  And although Dr. Whitlow significantly limited the claimant's walking, in December 2007 the claimant reported that he was walking a mile daily.  And regarding the question posed to Dr. Whittler about the claimant's limitations existing as of June 30, 2009 – that is a leading question posed to get a particular answer, which it did.  The question should have been open-ended, i.e. when did these limitations manifest themselves?

*PAGEID* 49.

The administrative law judge's evaluation of Dr. Whitlow's opinion does not violate the treating physician rule.  The administrative law judge recognized Dr. Whitlow as plaintiff's "treating cardiologist," but discounted a portion of his opinion because the "objective evidence does not support the restrictions to low stress work and on walking and standing." *Id*.  The administrative law judge expressly discussed the medical evidence in support of this finding, and his evaluation in this regard is supported by substantial evidence.  The medical evidence simply does not support Dr. Whitlow's restrictions to low stress work and on walking and standing prior to plaintiff's date last insured.

Plaintiff has a history of coronary artery disease dating to at least 2000, with multiple bypass surgeries and stent placements. *See PAGEID* 394, 414-15, 423-28, 433-35.  In September 2006, plaintiff was "feeling well" and reported bicycling 80 to 120 miles per week. *PAGEID* 478. Plaintiff's last procedure prior to his date last insured was in October 2006, when he underwent a cardiac catheterization and drug-eluding stent placement.  *PAGEID* 436-38.

12

Plaintiff next saw Dr. Whitlow on December 27, 2007 for a "cardiac follow up and evaluation of symptoms." *PAGEID* 482. He reported having no hospitalizations or visits to the emergency department in the interim. *PAGEID* 482-83. Plaintiff reported an "odd, funny" feeling in his chest the prior October, but was otherwise "doing well." *PAGEID* 483-84. Plaintiff had returned to his exercise program after having stopped "for a few months secondary to an illness with his mother." *PAGEID* 484. He was "walking for 1 hour a day and feeling quite well." *Id*. Plaintiff's exercise test was "completely normal" and there was no evidence of infarction or exercise induced ischemia. *Id.* Dr. Whitlow encouraged plaintiff to continue a low animal fat diet, his medical regimen, and daily exercise. *Id*. Dr. Whitlow directed plaintiff to return in one year. *Id*.

Plaintiff next treated with Dr. Whitlow on January 22, 2009, for his "yearly check-up." *PAGIED* 487. Plaintiff reported that he had been "good" since his last visit in December 2007, and that he had not been to the emergency room or hospital since then. *PAGEID* 487-88. Plaintiff reported "upper and mid back 'tightness', occurring at rest, lasting 2-10 mintues." *PAGEID* 488. He had experienced back pain eight weeks prior, but "he started working out and now has the chest pain, 'maybe once weekly.'" *Id*. Dr. Whitlow noted that this discomfort "doesn't go his [sic] anterior chest." *PAGEID* 489. A stress test revealed no evidence of ischemia or infarction, normal global and regional left ventricular functioning, and no interval

13

changes from the December 27, 2007 study. *PAGIED* 488. Dr. Whitlow directed plaintiff to return in April 2010. *PAGEID* 490.

Plaintiff next treated with Dr. Whitlow in January 2011. *PAGEID* 608-13. Plaintiff reported that he was exercising without chest discomfort and that he had no chest discomfort. No EKG changes were reported, and his "stress echo was completely normal." *PAGEID* 613. Plaintiff "appear[ed] to be doing reasonably well at the present time without active symptoms of ischemic heart disease." *Id*.

In August 2011, plaintiff reported to Dr. Whitlow that he "has been doing okay," until three or four months earlier, when he began experiencing chest pain. *PAGEID* 617. Stents were placed in August 2011, *PAGEID* 605-07, a heart catheterization was conducted in June 2012, *PAGEID* 736-42, and plaintiff underwent bypass grafts in January 2013. *PAGEID* 804-18, 835-40.

As this review makes clear, the administrative law judge's evaluation of the evidence is supported by substantial evidence, as is his conclusion that plaintiff's "cardiac condition did worsen but this was not until 2011." *See PAGEID* 48. Plaintiff does not specifically challenge the administrative law judge's evaluation of the evidence in this regard. Instead, plaintiff argues that the administrative law judge erred in evaluating Dr. Whitlow's opinion by finding that "the question posed to Dr. [Whitlow] about the claimant's limitations existing as of June 30, 2009" was a leading question. *Statement of Errors*, p. 16. The Court finds no error in this regard. The administrative law judge's finding that the question was leading does

14

not detract from his conclusion that "the objective evidence does not support the restrictions to low stress work and on walking and standing." *PAGEID* 49. Moreover, plaintiff has not cited any authority to support his position that it is error for an administrative law judge to consider whether a question posed in a medical questionnaire is leading. *Cf Green v. Comm'r of Soc. Sec.*, No. 1:11-CV-522, 2012 WL 2620017, at *10 (S.D. Ohio July 5, 2012) ("Even though traditional evidentiary rules do not apply in social security proceedings, that does not mean that the ALJ was wholly prohibited from considering the format of the questions and Plaintiff's responses as one of several factors in evaluating Plaintiff's credibility in this case."), *report and recommendation adopted* 2012 WL 3755609 (S.D. Ohio Aug. 29, 2012).

Plaintiff next argues that the administrative law judge erred "in failing to obtain medical evidence from a medical expert" on remand, in light of the Appeals Council's directive to "[o]btain evidence from a medical expert to clarify the nature, severity, and limiting effects of the claimant's impairments for the period ending June 30, 2009." *Statement of Errors*, p. 18. The Commissioner contends that this failure does not warrant remand because "the ALJ's failure to call a medical expert does not make meaningful judicial review of the decision impossible" and "was, at most, harmless error." *Commissioner's Response*, p. 15.

"[T]here is no consensus among federal courts regarding whether an ALJ's failure to follow Appeals Council directives in a remand

15

order may serve as independent grounds for reversal absent other error." *Godbey v. Colvin*, No. 1:13-CV-00167, 2014 WL 4437647, at *5 (W.D. Ky. Sept. 9, 2014) (citing *Schults v. Colvin*, 1 F. Supp. 3d 712, 716 (E.D. Ky. 2014)). "Differing opinions exist not only between circuits, but also among courts within the Sixth Circuit, which has not considered this particular issue." *Schults*, 1 F. Supp. 3d at 716 (citing *Brown v. Comm'r of Soc. Sec.*, No. 1:08-CV-183, 2009 WL 465708 (W.D. Mich. Feb. 24, 2009); *Salvati v. Astrue*, No. 3:08-CV-494, 2010 WL 546490 (E.D. Tenn. Feb. 10, 2010)). Some courts consider an administrative law judge's failure to comply with directives of the Appeals Council to be a procedural error that can be so great as to deny the claimant fair process, *Godbey*, 2014 WL 4437647 at *6-7; *Salvati*, 2010 WL 546490 at *4-8; others assume, without deciding, that such an error may serve as an independent ground for reversal. *Keating v. Comm'r of Soc. Sec.*, No. 3:13-CV-487, 2014 WL 1238611, at *15 (N.D. Ohio Mar. 25, 2014); *Kearney v. Colvin*, 14 F. Supp. 3d 943, 950 (S.D. Ohio 2014); *Schults*, 1 F. Supp. 3d at 716. The overwhelming majority of courts in this circuit, however, have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand. *See O'day v. Comm'r of Soc. Sec.*, No. 1:13-CV-452, 2015 WL 225467, at *6 (W.D. Mich. Jan. 16, 2015); *Verschueren v. Comm'r of Soc. Sec.*, No. 1:13-CV-423, 2014 WL 4925866, at *10 (W.D. Mich. Sept. 30, 2014); *Caldwell v. Colvin*, No. CIV.A. 13-131, 2014 WL 3747548, at *3 (E.D. Ky. July 29, 2014); *Cooper v. Colvin*, No. 5:13-CV-00217, 2014 WL

16

2167651, at *2 (W.D. Ky. May 23, 2014) ("Plaintiff's contention that the ALJ's decision does not comply with the Remand Order is not cognizable in this judicial review."); *Prichard v. Astrue*, No. 2:08-0055, 2011 WL 794997, at *15 (M.D. Tenn. Feb. 28, 2011) ("Plainly stated, this Court's scope of review 'is limited to an analysis of the ALJ's decision and not a review of the ALJ's compliance with the Appeals Council's Order of Remand.'"), *report and recommendation adopted,* 2011 WL 1113755 (M.D. Tenn. Mar. 25, 2011); *Peterson v. Comm'r Of Soc. Sec.*, No. 09-11222, 2010 WL 420000, at *7 (E.D. Mich. Jan. 29, 2010) ("[S]ince 'the district court does not review internal agency-level proceedings, it will not address whether the ALJ complied with the specific provisions of the Appeals Council's order of remand.'"); *Dishman v. Astrue*, No. 4:08-CV-58, 2009 WL 2823653, at *11 (E.D. Tenn. Aug. 27, 2009); *Riddle v. Astrue*, No. 2:06-00004, 2009 WL 804056, at *19 (M.D. Tenn. Mar. 25, 2009); *Brown*, 2009 WL 465708 at *5 ("Plaintiff's appeal is inappropriate, because it seeks to have this court review an internal agency matter. . . . Nevertheless, the court concludes that it lacks jurisdiction to address plaintiff's claims."). This Court agrees that federal courts lack jurisdiction to consider whether an administrative law judge has complied with the Appeals Council's instructions on remand.

When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (citing 20 C.F.R. §

17

404.955).  Under such circumstances, a court called upon to review the final decision of the Commissioner of Social Security is confined to a review of the administrative law judge's decision and the evidence presented to the administrative law judge. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992)).  "Whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision."  *Brown*, 2009 WL 465708 at *6.  The Appeals Council had an opportunity to review the administrative law judge's compliance with its directives, and it did not remand the matter a second time.  This Court has no authority to review the decision of the Appeals Council, *see Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996), and "Section 405(g) does not provide this court with authority to review intermediate agency decisions that occur during the administrative review process."  *Brown*, 2009 WL 465708 at *6.  This Court therefore concludes that it lacks jurisdiction to consider whether the administrative law judge complied with the Appeals Council's instructions on remand.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

18

**Procedure on Objections**

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which

fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


June 19, 2015                                              *s/Norah McCann King*
                                                          Norah M<sup>c</sup>Cann King
                                                     United States Magistrate Judge